

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

April 8, 1963

Honorable Tom Blackwell          Opinion No. C-53
District Attorney
Travis County                    Re:  Various questions re-
Austin, Texas                         lating to unimproved
                                      property on the High-
                                      land Lakes within
                                      Travis County, to be
Dear Mr. Blackwell:                   made into a county park.

        Your request for an opinion reads in part as fol-
lows:

        "The County Auditor has requested that
your legal opinion be obtained concerning
the expenditure of County funds on land leas-
ed by the County from the LCRA for Public
Park purposes.

        "FACTS:   The LCRA and others own fee simple
                  title to unimproved property locat-
                  ed on certain of the Highland lakes
                  within Travis County and not within
                  the boundary of any incorporated city,
                  town or village.  This land has been
                  offered to Travis County on long term
                  leases (50-99 years) without cost pro-
                  viding Travis County will make and
                  maintain a public park out of the land.

        "QUESTION No. 1.  Out of what funds can Travis
                  County legally pay for the construc-
                  tion of permanent improvements on such
                  land?

        "QUESTION No. 2.  Do the construction of roads,
                  boat ramps, and other conservation mea-
                  sures come under the same rule as perma-
                  nent improvements.

        "QUESTION No. 3.  Out of what Funds can Travis
                  County legally pay for the necessary
                  cost of maintenance and supervision
                  of such park?"

-261-

Section 1 of Article 6078, Vernon's Civil Statutes, provides:

"Each Commissioner Court is authorized to levy and collect a tax not to exceed five (5) cents on each one hundred dollars assessed valuation of the county for the purchase and improvement of lands for use as county parks. No such tax shall be levied and collected until the proposition is submitted to and ratified by the property taxpaying voters of such county at a general or special election called for that purpose, provided, a two-thirds majority of the property taxpaying voters of such county, at an election held for such purpose shall determine in favor of such tax. If said court desires to establish two or more of such county parks, they shall locate them in widely separated portions of the county. Said court shall have full power and control over any and all such parks and may levy and collect an annual tax sufficient in their judgment to properly maintain such parks and build and construct pavilions and such other buildings as they may deem necessary, lay out and open driveways and walks, pave the same or any part thereof, set out trees and shrubbery, construct ditches or lakes, and make such other improvements as they may deem proper. Such parks shall remain open for the free use of the public under such reasonable rules and regulations as such court may prescribe."

In construing the above quoted provisions, it was held in Attorney General's Opinion 0-1082 (1939):

"Article 6078, Revised Statutes, authorizes the commissioners' court of any county to levy and collect a tax not to exceed five cents on each one hundred dollars of assessed valuation of the county 'for the purchase and improvement of lands for use as county parks,' after the proposition has been submitted to and ratified by the property tax-paying voters of the county. The full power and control over such a park is vested in said court and it 'may levy and collect an annual tax sufficient in their judgment to properly maintain such parks

and build and construct pavilions and such
other buildings as they may deem necessary,
lay out and open driveways and walks, pave
the same or any part thereof, set out trees
and shrubbery, construct ditches or lakes,
and make such other improvements as they
may deem proper. Such parks shall remain
open for the free use of the public under
such reasonable rules and regulations as
said court may prescribe.'

"It is obvious that the money with which
to purchase a park site and to improve the
same must be paid from the general purpose
or the permanent improvement fund of the
county derived from the ad valorem tax levied
and collected under the authority conferred
and limitations imposed by Section 9, Article
8, supra. The statute is silent as to which
of these funds is the proper one to bear the
expense. It is provided in Article 6079,
Revised Civil Statutes, 'All revenue from the
sale of such privileges or concessions shall
go into a fund for the maintenance of said parks.'

"The Legislature has authorized any county
of this State to establish and maintain public
parks. Such parks are established for the bene-
volent purpose of promoting health, happiness
and general welfare of not only the citizens
of the county, but of the people generally.
The character of the improvements specifically
mentioned in the statute are designed to ac-
complish that purpose. Lewis v. City of Fort
Worth (Sup.Ct.) 89 S.W.(2d) 975.

" . . .

" . . . Article 6078 specifically author-
izes the court to purchase land and improve the
same by constructing buildings thereon, etc. It
follows that the land for park purposes may be
acquired and paid for out of the same fund a-
vailable for the erection of public buildings
and other permanent improvements. It is our
further opinion that current operating expenses
of such parks must be paid out of the general
purpose fund of the county."

Likewise, it was held in Attorney General's Opinion
V-744 (1948):

"Tax levied for park improvement is a charge against the County Permanent Improvement Fund and that levied for maintenance is a charge against the County General Fund."

In Carroll v. Williams, 109 Tex. 155, 202 S.W. 504, 509 (1918), the Court stated:

"Taxes levied ostensibly for any specific purpose or class of purposes designated in section 9 of article VIII, supra, must be applied thereunto, in good faith; and in no event and under no circumstances may there be expended, legally, for one such purpose or class of purposes, tax money in excess of the amount raised by taxation declaredly for that particular purpose or class of purposes."

Under the facts submitted with your request, Travis County will obtain the use and benefit of the property on long term leases (50-99 years), in consideration for the County establishing and maintaining a public park out of the land. It is our opinion that such purpose constituted a public purpose and is within the expressed power granted the commissioners court by the provisions of Article 6078, Vernon's Civil Statutes.

In view of the foregoing authorities, you are advised that the construction of improvements on such land must be paid out of the Permanent Improvement Fund. You are further advised that the construction of boat ramps and other permanent structures (including necessary repairs and improvement of such structures) must be paid out of the Permanent Improvement Fund. The construction of roads (including maintenance and repair of such roads), however, must be paid out of the Road and Bridge Fund of the County. Carroll v. Williams, supra. In Attorney General's Opinion V-831 (1949), it was held that the Permanent Improvement Fund may not be utilized for the purpose of purchasing materials and supplies for the construction of fences for adjacent landowners on rights of way on new county roads and highways, stating that if such expense was a necessary expense to the construction of the road, it would have to be paid out of the Road and Bridge Fund of the County. We believe the same principle is applicable to the construction of roads for the proposed county park. You are therefore advised in answer to your second question that the construction of roads must be paid out of the Road and Bridge Fund of the County (including necessary maintenance and repair of such roads).

In answer to your third question, you are advised that the necessary cost of maintenance and supervision of such park is paid out of the General Fund of the County. Attorney General's Opinions V-744 (1948) and O-1082 (1939). However, as pointed out above, the necessary repairs and improvements to structures built in the park must be paid out of the Permanent Improvement Fund, and necessary maintenance and repair of roads in the park must be paid out of the Road and Bridge Fund.

## SUMMARY

The Commissioners Court of Travis County may legally pay for the construction of permanent improvements (including necessary repair and improvement of such structures) on a proposed county park out of the Permanent Improvement Fund. The construction of roads in such park (including maintenance and repair of such roads) is paid out of the Road and Bridge Fund. The cost of maintenance and supervision of such park is paid out of the General Fund of the County. However, any repairs and improvements to structures built in the park must be paid out of the Permanent Improvement Fund, and maintenance and repairs of roads in the park must be paid out of the Road and Bridge Fund.

Yours very truly,

WAGGONER CARR
Attorney General

By John Reeves
John Reeves
Assistant

JR:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

J. C. Davis
V. F. Taylor
Ernest Fortenberry
James N. Stofer

APPROVED FOR THE ATTORNEY GENERAL
By:   Stanton Stone